FILED

2014 FEB 12 PM 2:51

CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CALIF.
LOS ANGELES

BY _____

1  JOHN BURTON (SBN 86029)
   jb@johnburtonlaw.com
2  THE LAW OFFICES OF JOHN BURTON
   4 East Holly St. Suite 201
3  Pasadena, CA 91103
   Tel.: 626-449-8300/Fax:   626-449-4417
4
   PAULA D. PEARLMAN (SBN 109038)
5  Paula.Pearlman@lls.edu
   ANNA RIVERA (SBN 239601)
6  Anna.Rivera@lls.edu
   DISABILITY RIGHTS LEGAL CENTER
7  800 S. Figueroa Street, Suite 1120
   Los Angeles, CA  90017
8  Tel.:  (213) 736-1496/Fax:  (213) 736-1428

9  Attorneys for Plaintiffs

10              **UNITED STATES DISTRICT COURT**

11            **CENTRAL DISTRICT OF CALIFORNIA**

12

13  JONATHAN MEISTER, an individual,     ) CASE NO.: CV14 - 1096 MWF (SHx)
    and GREATER LOS ANGELES             )
14  AGENCY ON DEAFNESS, INC.,           ) COMPLAINT FOR DECLARATORY
                                        ) AND INJUNCTIVE RELIEF AND
15              Plaintiffs,             ) DAMAGES PURSUANT TO:
                                        )
16      vs.                            ) 1. Title II of the Americans with
                                        )    Disabilities Act (42 U.S.C. §§ 12131
17  CITY OF HAWTHORNE;                  )    et. seq.);
    HAWTHORNE POLICE                    )
18  DEPARTMENT; ROBERT D. FAGER,        ) 2. Section 504 of the Rehabilitation Act
    Individually and in his Official Capacity )    of 1973 (29 U.S.C. §794 et. seq.);
19  as the Chief of Police; Officer JEFFREY )
    SALMON; Officer JEFFREY TYSL;       ) 3. California Government Code § 11135;
20  Officer ERICA BRISTOW; Officer      )
    MARK HULTGREN and DOES 1-10,        ) 4. 42 U.S.C. § 1983; and
21  Inclusive.                          )
                                        ) 5. California Civil Code  §§ 51, 51.7, 52,
22              Defendants.             )    52.1, 54, 54.1, and 54.3.
                                        )
23  _____ ) DEMAND FOR JURY TRIAL
                                        )
24                                      )
                                        )
25                                      )

26

27

28
                          COMPLAINT

**JURISDICTION AND VENUE**

1.    This action arises under the laws of the United States, including the American with Disabilities Act ("ADA" and (42 U.S.C. §12131 *et seq.*) (The "ADA"), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) (the "Rehabilitation Act"), as well as 42 U.S.C. § 1983, such that the Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Through the same events and omissions that form the basis for Plaintiffs' federal claims, Defendants have also violated Plaintiffs' rights under state law, over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. This Court has jurisdiction over Plaintiffs' claims for declaratory and injunctive relief pursuant to 28 U.S.C. § 2201 and 2202 and Rule 65 of the Federal Rules of Civil Procedure.

2.    Venue over Plaintiffs' claims is proper in the Central District of California because Defendants reside in the Central District of California within the meaning of 28 U.S.C. § 1394, and because the events, acts, and omissions giving rise to Plaintiffs' claims occurred in the Central District of California.

**INTRODUCTION**

Plaintiffs JONATHAN MEISTER and the GREATER LOS ANGELES AGENCY ON DEAFNESS, INC. (GLAD) bring this action for equitable relief and damages against the CITY OF HAWTHORNE, the HAWTHORNE POLICE DEPARTMENT ("HPD"), the HPD Chief of Police and various HPD officers for failing to provide effective communication to deaf and hard of hearing individuals, including himself, who come into contact and interact with the HPD, thereby discriminating against them. Plaintiffs also bring this complaint because of the failure on the part of the CITY, HPD, DOES 1 through 10 (collectively "DEFENDANTS") to properly supervise and train their officers and other employees to effectively communicate with individuals who are deaf and hard of hearing during investigation, arrest, booking, interrogation, and while otherwise in HPD's custody or otherwise interacting with HPD, in violation of federal and state law.

3.       During the early evening of February 13, 2013, HPD officers confronted Mr. Meister as he was removing his own property from the backyard of a friend's home, with the friend's consent. The officers either failed to recognize that Mr. Meister is deaf, cannot hear, and/or failed to take into account that he communicates primarily using American Sign Language, a complete, complex language that employs signs made by moving the hands combined with facial expressions and postures of the body. The HPD officers shot taser darts into Mr. Meister, administered a number of painful electric shocks, struck him with fists and feet, and forcibly took him to the ground. The officers then arrested Mr. Meister allegedly for assaulting them.

4.       This incident occurred in substantial part because the HPD does not provide its officers the training and resources to serve people who are deaf or hard of hearing, including those who communicate primarily through American Sign Language. Mr. Meister's injuries were, in part, the result of Defendants' failure to adopt and implement policies and procedures to ensure that communications with individuals who are deaf and hard of hearing are as effective as communications with others during law enforcement interactions, as well as the HPD's general deliberate indifference to the behavior of its officers during their interaction with members of the public.

5.       Mr. Meister, who communicates primarily through American Sign Language, alleges that HPD officers failed to take appropriate steps to communicate effectively with him or furnish appropriate auxiliary aids throughout the course of HPD's confrontation with including their initial contact, interrogations in the field, arrest and detention, including transporting him to the station, at the station and subsequent release.  He was never provided with any appropriate auxiliary aids which resulted in HPD's failure to effectively communicate with him in violation of federal and state law. Plaintiffs further allege that HPD does not train or supervise their officers and employees to provide hard of hearing or deaf individuals with effective communication,

such as qualified sign language interpreters, when necessary to effectively communicate with hard of hearing or deaf individuals.

6.     Plaintiffs therefore bring this action seeking declaratory and injunctive relief to compel the HPD to adopt policies, procedures and training to officers to ensure that  appropriate auxiliary aids and services are provided to individuals who are deaf and hard of hearing where necessary to ensure effective communication.

7.     Plaintiffs also seek compensatory, statutory, punitive damages (where permitted), attorneys' fees and costs.

## PARTIES

8.     Plaintiff JONATHAN MEISTER ("Mr. Meister") is an adult qualified to bring suit.  He is profoundly deaf, and therefore substantially limited in the major life activities of hearing and speaking. Mr. Meister is, and at all times relevant herein was, a qualified person with a "disability" as that term is defined under the ADA and its implementing regulations (42 U.S.C. § 12102; 28 C.F.R. § 36.104), Section 504 and its implementing regulations (29 U.S.C. § 705(20)(A); 28 C.F.R. 41.32(b)), and California law (Cal. Gov't Code § 12926).   Mr. Meister is, and at all times relevant herein was a resident of the State of California.

9.     Plaintiff GREATER LOS ANGELES AGENCY ON DEAFNESS, INC. ("GLAD") is a nationally recognized advocacy and service agency addressing the needs of the deaf and hard of hearing population. GLAD's mission is to ensure equal access of the deaf and hard of hearing community to the same opportunities afforded their hearing counterparts. The organization's general purposes and powers are directed around the promotion of the social, recreational, cultural, educational, and vocational well-being of its deaf and hard of hearing constituents.

10.     GLAD's specific and primary purpose is to act as a coordinating agency that addresses the broad social service needs of deaf and hard of hearing people through direct service provision, advocacy, research and dissemination of information regarding

deafness to parents, professionals and consumers. For over 43 years, GLAD has been improving the lives of the deaf and hard of hearing community, proudly serving 10 counties throughout Southern California:  Los Angeles, Kern, Orange, Ventura, Santa Barbara, Riverside, San Luis Obispo, San Bernardino, Inyo and Mono. GLAD is committed to the philosophy "of, by, for and with the deaf and hard of hearing."

11.     GLAD's constituents and the individuals that it serves are "qualified individuals with a disability" within the meaning of all applicable statutes including 42 U.S.C. § 12131(2) and Cal. Gov't Code § 12926.

12.     GLAD is qualified to represent the interests of its constituents in this lawsuit because:

a.     Those constituents would otherwise have standing to sue in their own right;

b.     GLAD's interest to ensure non-discriminatory access to government programs, services and activities, including non-discriminatory law enforcement procedures, for its constituents is germane to its purpose as an organization; and

c.     Neither the claims asserted nor the relief requested through this lawsuit require the participation of GLAD's individual constituents.

13.     GLAD has also experienced harm including economic loss due to diversion of their resources and a frustration of mission, and has independent standing to challenge Defendants' discriminatory acts and omissions as alleged herein.

14.     Defendant CITY OF HAWTHORNE ("CITY") is a local government and public entity within the meaning of Title II of the ADA, and receives federal funding within the meaning of the Rehabilitation Act.

15.     Defendant HAWTHORNE POLICE DEPARTMENT ('HPD") is a local government entity and an agency of Defendant CITY independently subject to suit.  It is a public entity within the meaning of Title II of the ADA, and on information and belief receives federal funding within the meaning of the Rehabilitation Act.  The CITY

provides funding to and oversight of Defendant HPD.  The HPD is responsible for the acts herein.

16.     Defendant ROBERT D. FAGER is the Chief of Police for the City of Hawthorne.  He is sued both in his individual and his official capacity. In doing the acts alleged herein he acted within the scope of his employment and under color of state law.

17.     Defendant JEFFREY SALMON is, and at all times relevant hereto was, an HPD Police Officer.  In doing the acts alleged herein he acted within the scope of his employment and under color of state law.

18.     Defendant JEFFREY TYSL is, and at all times relevant hereto was, an HPD Police Officer.  In doing the acts alleged herein he acted within the scope of his employment and under color of state law.

19.     Defendant ERICA BRISTOW is, and at all times relevant hereto was, an HPD Police Officer.  In doing the acts alleged herein she acted within the scope of her employment and under color of state law.

20.     Defendant MARK HULTGREN is, and at all times relevant hereto was, an HPD Police Officer. In doing the acts alleged herein he acted within the scope of his employment and under color of state law.

21.     Under California Government Code § 815(a), Defendants are liable for any and all wrongful acts in violation of state law hereinafter complained of committed by any of these Defendants' employees acting within the course and scope of their employment.

22.     Plaintiffs are currently unaware of the true names and identities of DOE Defendants 1-10 and therefore sue those Defendants by these fictitious names. Plaintiffs will amend their Complaint to allege the DOE Defendants' legal names and capacities as soon as such information is ascertained.  Plaintiffs are informed and believe, and, based thereon allege, that all times herein mentioned each and every

Defendant was the agent, servant, employee, co-conspirator, and/or representative of each and every other Defendant and was, in doing the things complained of herein, acting within the scope of said agency, service, employment, conspiracy, and/or representation, and that each and every Defendant was acting within his/her actual or apparent authority with the full knowledge and consent of each other Defendant.

## GENERAL ALLEGATIONS

23.     Jonathan Meister is a graduate of Ohio State University with a master's degree in architecture. He is employed professionally.

24.     Prior to February 13, 2013, Mr. Meister had never been arrested.

25.     Mr. Meister, shortly before this incident, shared a residence with two brothers, Daniel and David Gavrilovic. They moved to separate residences after the Gavrilovic brothers bought the home located at 3559 West 147th Street in the City of Hawthorne.

26.     Because there was repair and renovation work being done inside the home at 3559 West 147th Street home on February 13, 2013, the Gavrilovic brothers stored belongings on the back porch, accessible through a gate, but within a walled-in back yard. Mr. Meister had some of his personal property stored there as well.

27.     Mr. Meister had made plans to visit family and go snowboarding in Utah, and had a plane reservation for the morning of February 14, 2013. He made arrangements with Daniel Gavrilovic to pick up his snowboard and winter clothes, and some other property of his mixed in with the Gavrilovic brothers' belongings on the back porch at the 147th Street address. Daniel was not planning to be there at the time, but it made no difference because Mr. Meister knew he could hop over a low fence (about four feet high), go through the gate that Daniel was leaving unlocked for him, and retrieve his belongings from the porch.

28.     Mr. Meister went by the Gavrilovic's 147th Street home around 6:30 p.m., just as it was getting dark, so there would still be some light available, and he would still

have time to attend his regular Bible study class. While he was going through boxes on the back porch, on information and belief, one or more concerned neighbors looked over the wall and called out to him. Mr. Meister did not respond. He could not see them because he was facing away and could not hear them because he is profoundly deaf.

29.    The HPD was called to investigate what were mistakenly, but understandably, perceived as "suspicious circumstances."

30.    HPD officers Jeffrey Salmon and Jeffrey Tysl arrived first. They watched Mr. Meister as he walked through the gate, out of the backyard, carrying some of his personal belongings to his car. When Mr. Meister saw the officers, he put his belongings down and, while still standing in the yard, behind the low fence, attempted to convey that he cannot hear by gesturing to his ear. Mr. Meister, like many other people who are deaf or hard of hearing, communicates primarily in ASL and does not speak effectively. He requires extra space for hand and arm gestures to communicate, especially when the people with whom he is trying to communicate are not familiar with sign language.

31.    Mr. Meister understood the body language of Officers Salmon and Tysl as directing that Mr. Meister come to their side of the fence, and that there would be no problem if he did so. Mr. Meister trusted that the officers understood that he was deaf.

32.    Following the officers' instructions, Mr. Meister left his friends' private property – where he had permission to be – and hopped the low fence, onto the sidewalk. Next he walked over to the officers, as they were directing him to do, all the while trying to explain with calm hand gestures what was going on.

33.    Before Mr. Meister could communicate his reasons for being at the Gavrilovic's home, however, Officers Salmon and Tysl grabbed Mr. Meister's wrists and turned him around so that he could not see them. Because he is deaf, Mr. Meister depends on using his hands while facing a person to communicate. The officers' sudden aggression, which both caused pain and interfered with his ability to communicate, caused Mr. Meister reflexively to pull his hands away, hop back over the fence, and step

toward the gate. He was not resisting in any way, he only wanted to create some space so that he could communicate with his hands while facing the officers because he did not have his cell phone, which he usually uses to communicate, on his person at that moment. The officers jumped over the low fence themselves -- one falling on his face in the process -- grabbed Mr. Meister and pushed him up against a wall.

34.    According to the officers' reports, Officer Salmon tried to put a potentially lethal carotid choke hold around Mr. Meister's neck, and after being unable to do so, kneed him twice in the abdomen.

35.    Officers Salmon and Tysl then grabbed Mr. Meister's arms and shoved him against the Gavrilovics' locked-up car parked in the driveway.

36.    At some point, HPD officers Erica Bristow and Mark Hultgren joined the beating of Mr. Meister. After being unable to pull Mr. Meister to the ground (Mr. Meister played club rugby at Ohio State and instinctively tries to stay on his feet when being tackled), Office Tysl punched him in the face repeatedly while Officer Salmon shot darts from a TASER Model X26 electrical control device into Mr. Meister's left side, causing five seconds of rapidly pulsing electrical shocks. Officer Salmon reported that the X26 current had the desired result and Mr. Meister fell face down.

37.    While Mr. Meister was on the ground, Officer Salmon kicked Mr. Meister four times in the stomach, and Officer Hultgren kicked Mr. Meister twice more in the side. Officer Tysl elbowed Mr. Meister in the face repeatedly, Officer Bristow picked up the X26 (which Officer Salmon had dropped) and delivered several more shocks.

38.    Officer Salmon kneeled on Mr. Meister's back, using body weight to push him into the ground. Officer Salmon then took the X26 back from Officer Bristow, and pulled the trigger to give Mr. Meister another excruciatingly painful five seconds of punishing shocks.

39.    Officer Hultgen pulled out a second X26 and "drive stunned" Mr. Meister repeatedly, deliberately burning his flesh with electrical current, while Officer Tysl put

Mr. Meister into a second carotid choke hold and knocked him unconscious. Mr. Meister was then handcuffed and placed under arrest for assaulting the police officers.

40.     Other officers took Mr. Meister to get medical treatment.

41.     After receiving medical clearance, Mr. Meister was taken to the police station, where he was finally provided the opportunity to communicate in writing and was provided his cell phone so that he could text for help.  He was told that he would be held on $20,000 bail, but was later cited and released.

42.     Mr. Meister had to appear in court on more than one occasion. Eventually the charges were dismissed.

43.     Mr. Meister contends, based on the foregoing, that the City of Hawthorne, the HPD, and its employees and agents, acting under color of law and within the course and scope of their employment, violated his civil rights and subjected him to various common-law and statutory torts, all of which subject the City, the HPD and the involved employees to personal and vicarious liability.

44.     Plaintiffs Meister and GLAD are informed, believe, and thereon allege that Defendants have failed and continue to fail to:

        a.     Take appropriate steps to ensure that communication with individuals who are deaf or hard of hearing is as effective as communications with others;

        b.     Provide appropriate auxiliary aids and services;

        c.     Give primary consideration to the type of auxiliary aids requested by individuals who are deaf or hard of hearing; and

        d.     Ensure that individuals who are deaf or hard of hearing can obtain information as to the existence and location of accessible services, activities, and facilities.

45.     Plaintiffs Meister and GLAD are informed, believe, and thereon allege that Defendants CITY and HPD have not adopted and do not enforce appropriate policies and procedures to ensure that HPD takes appropriate steps to:

a.     Ensure that communication with individuals who are deaf or hard of hearing is as effective as communications with others;

b.     Provides appropriate auxiliary aids and services;

c.     Give primary consideration to the type of auxiliary aids requested by individuals who are deaf or hard of hearing; and

d.     Ensure that these persons can obtain information as to the existence and location of accessible services, activities, and facilities.

46.     Plaintiffs Meister and GLAD are informed, believe, and thereon allege that Defendants CITY and HPD have failed and continue to fail to provide HPD officers and employees with appropriate training regarding the right of individuals who are deaf or hard of hearing under the ADA and Section 504 and state disability rights laws.

47.     Defendants' acts and omissions, as herein described, were intentional, knowing, willful, wanton, malicious and/or recklessly in disregard for Plaintiffs federally protected and state protected rights.

48.     Plaintiffs were deprived of an interest protected by the Constitution or laws of the United States and the State of California, and Defendants caused such deprivation while acting under color of state law.

49.     As the result of Defendants' acts and omissions, as herein described, Plaintiffs were, and will continue to be denied full and equal access to the programs, services and activities offered to members of the public by HPD, and have suffered discrimination, extreme physical pain and suffering, humiliation, hardship, anxiety, and indignity, and severe mental and emotional anguish pain, all to their damage.

50.     An actual and substantial controversy currently exists between Plaintiffs and Defendants as to their respective legal rights and duties. Accordingly, declaratory relief pursuant to 28 U.S.C. § 2201 is appropriate.

51.     The violations of the ADA and Section 504 and related state statutes as set forth herein, if not enjoined by this Court, will continue to afflict Plaintiffs and similarly

situated persons and cause them to suffer irreparable physical and emotional harm unnecessarily. Plaintiffs have no plain, speedy, and adequate remedy at law for such an injury. Accordingly, injunctive relief pursuant to 42 U.S.C. § 12133, 29 U.S.C. § 794(a) and other authority is appropriate.

52.    In addition to declaratory and injunctive relief, Plaintiff Meister claims damages for his physical and emotional injuries, punitive damages against the involved individuals, statutory damages as appropriate, and attorneys' fees and costs.

## GOVERNMENT CLAIM FILED

53.    Plaintiff Meister timely filed a claim pursuant to § 910 et seq. of the California Government Code with the City on August 10, 2013.  On October 9, 2013, a notice was issued to Plaintiff Meister informing him that his claim had been denied at a meeting of the Hawthorne City Council on September 24, 2013.

## FIRST CLAIM FOR RELIEF
### Violation of Title II of the Americans with Disabilities Act
### (42 U.S.C. § 12131 et seq.)
### (Plaintiffs against Defendants HPD and CITY)

54.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

55.    Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be "serious and pervasive social problem."  42 U.S.C. § 12101(a)(2).

56.    In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(l) (2).

57.    Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

58.    The U.S. Department of Justice's regulations implementing Title II, 28 C.F.R. § 35.160, require public entities to:

a.    Take appropriate steps to ensure that communications with members of the public with disabilities are as effective as communications with others;

b.    Furnish appropriate auxiliary aids and services (including qualified sign language interpreters) where necessary to afford an individual with a disability an equal opportunity to enjoy the benefits of a service, program, or activity conducted by the public entity; and

c.    In determining what type of auxiliary aid and service is necessary, a public entity shall give primary consideration to the requests of the individual with a disability.

59.    At 28 C.F.R. § 35.163(b), the regulations also require public entities to ensure that persons who are deaf or are hard of hearing can obtain information as to the existence and location of accessible, services, activities, and facilities.

60.    At all times relevant to this action, Defendants were public entities within the meaning of Title II of the ADA and provided a program, service, or activity to the general public.

61.    At all times relevant to this action, Plaintiffs were qualified individuals with a disability within the meaning of Title II of the ADA and met the essential eligibility requirements for the receipt of the services, programs, or activities of Defendants.

62.    Through the acts and omissions of Defendants and their agents and employees described herein, Defendants have subjected Plaintiffs to discrimination on

the basis of disability in violation of Title II of the ADA by failing to provide them with communication that is as effective as communication provided to the general public during the course of law enforcement interactions including but not limited to investigation; arrest; transportation; booking, questioning and interrogation at the station; and/or while otherwise in DEFENDANTS custody.

63.     Plaintiff is informed, believes, and thereon alleges that DEFENDANTS and their agents and employees could have reasonably provided him with one or more of the following auxiliary aids and services in order to effectively communicate with him:

a.  A qualified sign language interpreter at the scene of the investigation;

b.  A qualified sign language interpreter during the arrest;

c.  A qualified sign language interpreter informing Plaintiff of the reason for his arrest and his *Miranda* rights;

d.  A qualified sign language interpreter during his booking;

e.  A qualified sign language interpreter during questioning and interrogation;

f.  A qualified sign language interpreter while held in custody; and/or

g.  A Telecommunication Device for the Deaf (TDD), Video Relay Service or equally effective telecommunication system while held in custody.

64.     PLAINTIFFS are informed, believe, and thereon allege that DEFENDANTS and their agents and employees have failed and continue to fail to:

a.  Adopt and enforce additional policies and procedures for communicating effectively with individuals who are deaf or hard of hearing;

b.  Train and supervise HPD officers and employees to communicate effectively with individuals who are deaf or hard of hearing; and

c.  Train and supervise HPD officers and employees regarding the culture and behavior of individual who are deaf or hard of hearing.

1    Because DEFENDANTS' discriminatory conduct is ongoing, declaratory and injunctive

2    relief are appropriate remedies.

3        65.    Pursuant to 42 U.S.C. §§ 12133 and 12205, Plaintiffs pray for judgment as

4    set forth below.

5

6                        **SECOND CLAIM FOR RELIEF**

7              **Violation of Section 504 of the Rehabilitation Act of 1973**
                              **(29 U.S.C. § 794)**

8                  **(Plaintiffs against Defendants HPD and CITY)**

9        66.    Plaintiffs incorporate by reference each and every allegation contained in

10   the foregoing paragraphs.

11       67.    Section 504 of the Rehabilitation Act of 1973 provides in pertinent part:

12   "[N]o otherwise qualified individual with a disability. . . shall, solely by reason of her or

13   his disability, be excluded from the participation in, be denied the benefits, or be

14   subjected to discrimination under any program or activity receiving federal financial

15   assistance . . ." 29 U.S.C. § 794.

16       68.    Plaintiffs were at all times relevant herein qualified individuals with

17   disabilities within the meaning of the Rehabilitation Act because they have physical

18   impairments that substantially limits one or more of their major life activities.  See 29

19   U.S.C. § 705(20)(B).

20       69.    At all times relevant to this action Defendants were recipients of federal

21   funding within the meaning of the Rehabilitation Act.

22

23       70.    Through their acts and omissions described herein, Defendants have

24   violated the Rehabilitation Act by excluding Plaintiffs from participation in, by denying

25   them the benefits of, and subjecting them to discrimination in the benefits and services

26   Defendants provide to the general public.

27

28

---

COMPLAINT
- 15 -

71.     Pursuant to the remedies, procedures, and rights set forth in 29 U.S.C. § 794(a), Plaintiffs pray for judgment as set forth below.

## THIRD CLAIM FOR RELIEF
### Violation of Cal. Gov't Code § 11135
### (Plaintiffs against Defendants HPD and CITY)

72.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

73.     Section 11135(a) of the California Government Code provides in pertinent part: "No person in the State of California shall, on the basis of… disability, be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is funded directly by the state or receives any financial assistance from the state."  Cal. Gov't Code § 11135(a).

74.     A violation of Title II of the ADA is a violation of Cal. Gov't Code § 11135(b).

75.     At all times relevant to this action, Defendants received financial assistance from the state of California.

76.     Defendants' acts and omissions, as described herein, have excluded and/or denied Plaintiffs the benefit of and/or participation in the programs, services and activities they offer to the general public, thereby violating Plaintiffs' rights under Cal. Gov. Code § 11135.

77.     Pursuant to the remedies, procedures, and right set forth in 42 U.S.C. §§ 12133 and 12205, Plaintiffs pray for judgment as set forth below.

## FOURTH CLAIM FOR RELIEF
### Deprivation Of Civil Rights -- Individual Liability
### (42 U.S.C. § 1983)
### (Plaintiff Meister against Defendants  Salmon, Tysl, Bristow, Hultgren and Does)

78.     Plaintiff Meister incorporates by reference each and every allegation contained in the foregoing paragraphs.

79.     Defendants Salmon, Tysl, Bristow and Hultgren and Does 1 through 10, while acting under color of law, deprived Plaintiff of his civil rights by violating his rights under the Fourth and Fourteenth Amendments to be secure in his person and free from excessive force, false arrest and imprisonment, and malicious prosecution.

80.     The above acts and omissions, while carried out under color of law, have no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power, shock the conscience, are fundamentally unfair, arbitrary and oppressive, and unrelated to any activity in which governmental officers may appropriately and legally undertake in the course of protecting persons or property, or ensuring civil order.  The above acts and omissions were consciously chosen from among various alternatives.

81.     As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Plaintiff was injured in his health and person. He suffered and will continue to suffer great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused Plaintiff to sustain damages in a sum to be determined at trial.

82.     As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants Plaintiff suffered past and future losses of income which have caused Plaintiff to sustain damages in a sum to be determined at trial.

83.     As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Plaintiff incurred medical expenses, and will incur future medical expenses, which have caused Plaintiff to sustain damages in a sum to be determined at trial.

84.     As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Plaintiff

was taken to jail and had to respond to criminal court proceedings where he could have theoretically been convicted of a crime and sentenced to jail.

85.     The above mentioned individually named and Doe defendants, acted under color of law, and both separately and in concert. The aforementioned acts of those defendants, and each of them, were willful, wanton, malicious and oppressive, with reckless disregard or with deliberate indifference and with the intent to deprive Plaintiff of his constitutional rights and privileges, and did in fact violate the aforementioned rights and privileges, entitling Plaintiff to exemplary and punitive damages in an amount to be proven at the trial of this matter.

## FIFTH CLAIM FOR RELIEF
### Deprivation Of Civil Rights -- Entity and Supervisory Liability
### (42 U.S.C. § 1983)
### (Plaintiff Meister against HPD, CITY and FAGER)

86.     Plaintiff Meister incorporates by reference each and every allegation contained in the foregoing paragraphs.

87.     Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, defendants HPD, CITY and FAGER, with deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of Plaintiff, including the right to be free from unreasonable seizures, excessive force and malicious prosecution under the Fourth Amendment, and the right to procedural and substantive due process and equal protection under the Fourteenth Amendment, maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied, among others, the following policies, practices and customs:

   a.     Failing to adequately train, supervise, and control their officers in uses of force;

   b.     Failing to adequately train, supervise, and control their officers in proper communication and appropriate responses to members of the public;

c.      Failing to set up systems to prevent abuse by officers including the failure to properly investigate uses of force;

d.      Failing to discipline officers involved in abusing their authority; and

e.      Condoning and encouraging their officers in the belief that they can violate the rights of persons such as the Plaintiff in this action with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

88.     As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Plaintiff was injured in his health and person. He suffered and will continue to suffer great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused Plaintiff to sustain damages in a sum to be determined at trial.

89.     As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants Plaintiff suffered past and future losses of income which have caused Plaintiff to sustain damages in a sum to be determined at trial.

90.     As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Plaintiff incurred medical expenses, and will incur future medical expenses, which have caused Plaintiff to sustain damages in a sum to be determined at trial.

91.     As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Plaintiff was taken to jail and had to respond to criminal court proceedings where he could have theoretically been convicted of a crime and sentenced to jail.

92.     The aforementioned actions of FAGER, both separately and in concert with the individual and doe defendants, were willful, wanton, malicious and oppressive,

with reckless disregard or with deliberate indifference and with the intent to deprive Plaintiff of his constitutional rights and privileges, and did in fact violate the aforementioned rights and privileges, entitling Plaintiff to exemplary and punitive damages against FAGER in an amount to be proven at the trial of this matter.

### SIXTH CLAIM FOR RELIEF
**Deprivation of Civil Rights**
**(Cal. Civ. Code §§ 51, 51.7, 52, 52.1, 54, 54.1, and 54.3)**
**(Plaintiff Meister against all Defendants)**

93.     Plaintiff Meister incorporates by reference each and every allegation contained in the foregoing paragraphs.

94.     Defendants provide police services and public safety services to the residents and other persons present in the City of Hawthorne. They are prohibited by the terms of the Unruh Civil Rights Act, Cal. Civil Code § 51 et seq., from engaging in any discrimination against any person suffering from a disability such as deafness.  By virtue of the conduct alleged above, defendants, and each of them, discriminated against and denied equal access to Plaintiff and others similarly situated in violation of Cal. Civil Code § 51.

95.     By using excessive force as described above on Plaintiff, including beating with fists and feet, take downs, and repeatedly shocking Plaintiff with a taser, Defendants violated Plaintiff's "right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of" his disability in violation of  Cal. Civ. Code § 51.7.

96.     The United States Constitution, Amend. IV, and the California Constitution, Art. I § 13, guarantee the right of persons to be free from excessive force and seizure without probable cause. Defendants, by engaging in the wrongful conduct alleged herein, denied these right to Plaintiff, thus giving rise to claims for damages pursuant to Cal. Civ. Code § 52.1.

97.    As a direct and proximate cause of the aforementioned acts of Defendants, Plaintiff was injured as set forth above, and is entitled to statutory damages under Cal. Civ. Code § 52, as well as compensatory and punitive damages according to proof.

98.    Based on the foregoing allegations, Defendants violated the rights guaranteed to Plaintiff by Cal. Civil Code §§ 54 and 54.1 and Defendants are thereby liable for treble actual damages provided by Cal. Civil Code § 54.3.

99.    As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Plaintiff was injured in his health and person. He suffered and will continue to suffer great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused Plaintiff to sustain damages in a sum to be determined at trial.

100.    As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants Plaintiff suffered past and future losses of income which have caused Plaintiff to sustain damages in a sum to be determined at trial.

101.    As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Plaintiff incurred medical expenses, and will incur future medical expenses, which have caused Plaintiff to sustain damages in a sum to be determined at trial.

102.    As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Plaintiff was taken to jail and had to respond to criminal court proceedings where he could have theoretically been convicted of a crime and sentenced to jail.

103.    The above mentioned individually named and Doe defendants, excluding defendants CITY, HPD acted under color of law, and both separately and in concert. The aforementioned acts of those defendants, and each of them, were willful, wanton,

malicious and oppressive, with reckless disregard or with deliberate indifference and with the intent to deprive Plaintiff of his constitutional rights and privileges, and did in fact violate the aforementioned rights and privileges, entitling Plaintiff  to exemplary and punitive damages in an amount to be proven at the trial of this matter.

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFFS request judgment as follows:

1.      A declaration that Defendants' conduct as alleged herein violated and continues to violate Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, and California Government Code § 11135.

2.      An injunction against HPD and/or the CITY including but not limited to the following:

a. Implementation of policies and procedures that ensure that HPD personnel have access to qualified sign language interpreters on an on call, twenty four hours, seven days a week basis, and should be able to summon qualified sign language interpreter within forty five minutes of making the request. Additionally, HPD personnel training should include instruction that enlisting the aid of personnel with limited use of sign language who are not qualified interpreters, is likely to result in ineffective communication with people who are deaf or hard of hearing.

b. Implementation of policies and procedures to inform individuals who are deaf or hard of hearing of the availability of auxiliary aids and services, including but no limited to the provision of a qualified sign language interpreter.  These policies should be posted in HPD stations and offices.

c. HPD shall revise and/or update its training and supervision programs to educate its officers and employees about providing effective communication and auxiliary aids to persons who are deaf or hard of hearing consistent with ADA and

California law to ensure equal access to programs, services, and activities. Training should include but not be limited to the provision of "primary consideration."  Such training should also include immediate implementation of a disability sensitivity training for all HPD officers and staff.

d.  HPD will maintain Telecommunication Devices for the Deaf and/or an equally effective system such as a Video Relay System, at all offices and divisions that directly interact with the public.  Each station shall ensure that all employees receiving phone calls from the public, and/or facilitating outgoing phone calls by persons who are deaf or hard of hearing, receive training and/or instruction on the use of TDDs.

e.  Implementation of policies and procedures to allow individuals whose requests for "effective communication" are not adequately addressed to obtain an adequate resolution.  These policies and procedures should include avenues for redress at the local (substation) level, as well as at the regional level.

f.  Implementation of any other policies and procedures necessary to prevent discrimination against individuals with disabilities through the failure to provide effective communication.

g.  Provision of sufficient documentation on a quarterly basis to plaintiff's counsel for three years after resolution to evidence compliance with the above conditions.

3.   Compensatory damages to Plaintiffs according to proof;

4.   Statutory damages and treble damages where appropriated;

5.   Punitive damages against all individual defendants;

5.   Attorneys' fees and costs, as provided by statute; and

6.   Such other relief as the Court finds just and proper.

Dated:  February 11, 2014
                THE LAW OFFICES OF JOHN BURTON
                DISABILITY RIGHTS LEGAL CENTER

By:    _____
      JOHN BURTON
      Attorneys for Plaintiffs
      JONATHAN MEISTER
      GREATER LOS ANGELES
      AGENCY ON DEAFNESS

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all claims subject to trial by jury.

Dated: February11, 2014
                THE LAW OFFICES OF JOHN BURTON
                DISABILITY RIGHTS LEGAL CENTER

By:    _____
      JOHN BURTON
      Attorneys for Plaintiffs
      JONATHAN MEISTER
      GREATER LOS ANGELES
      AGENCY ON DEAFNESS

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge     Michael W. Fitzgerald     and the assigned Magistrate Judge is     Stephen J. Hillman    .

The case number on all documents filed with the Court should read as follows:

## CV14-1096-MWF(SHx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

February 12, 2014
Date

By   C. Sawyer
Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

[x] Western Division
312 N. Spring Street, G-8
Los Angeles, CA 90012

[ ] Southern Division
411 West Fourth St., Ste 1053
Santa Ana, CA 92701

[ ] Eastern Division
3470 Twelfth Street, Room 134
Riverside, CA 92501

**Failure to file at the proper location will result in your documents being returned to you.**

---

CV-18 (08/13)        NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

ORIGINAL

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California ▼

JONATHAN MEISTER, an indiviual, and
GREATER LOS ANGELES AGENCY ON
DEAFNESS, INC.,

*Plaintiff(s)*

v.

CITY OF HAWTHORNE; HAWTHRONE POLICE
DEPARTMENT; ROBERT D. FAGER, Individually
and in his Official Capacity as the
Chief of Police; *(continued)*

*Defendant(s)*

)
)
)
)
)
)
)
)
)
)
)
)

CV14-1096 MWF (SHx)

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

John Burton
THE LAW OFFICES OF JOHN BURTON
4 East Holly Street, Suite 201
Pasadena, California 91103

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date: 2-12-14

_____
*Signature of Clerk or Deputy Clerk*

1149

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                                    *Server's signature*

                                                                    _____
                                                                    *Printed name and title*

                                                                    _____
                                                                    *Server's address*

Additional information regarding attempted service, etc:

ATTACHMENT TO SUMMONS


*(Defendants continued)*

Officer JEFFREY SALMON; Officer
JEFFREY TYSL; Officer ERICA BRISTOW;
Officer MARK HULTGREN  and
DOES 1-10, Inclusive.

        Defendants.

COPY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )
Jonathan Meister, an individual, and Greater Los Angeles Agency on Deafness, Inc.

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

**(b) County of Residence of First Listed Plaintiff** Los Angles
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**County of Residence of First Listed Defendant**
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c) Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.
John Burton, SBN 86029, THE LAW OFFICES OF JOHN BURTON
4 East Holly Street, Suite 201
Pasadena, California 91103

**Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☒ 3. Federal Question (U.S. Government Not a Party)
☐ 2. U.S. Government Defendant
☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No ☐ **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
42 U.S.C. Section 1983 - police misconduct

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☒ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☒ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number:

CV14-1096

CV-71 (11/13)                    **CIVIL COVER SHEET**                    Page 1 of 3

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes  ☒ No<br><br>If "no, " go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF?<br><br>Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT?<br><br>Then check the box below for the county  In which the majority of PLAINTIFFS reside. | |
| ☐ Yes  ☒ No<br><br>If "no, " go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A.<br>Los Angeles County | B.<br>Ventura, Santa Barbara, or San Luis Obispo Counties | C.<br>Orange County | D.<br>Riverside or San Bernardino Counties | E.<br>Outside the Central District of California | F.<br>Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

**C.1. Is either of the following true?  If so, check the one that applies:**

☐ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D,  below.

If none applies, answer question C2 to the right. ➡

**C.2. Is either of the following true?  If so, check the one that applies:**

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D,  below.

If none applies, go to the box below. ➡

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | Western |

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**IX(a). IDENTICAL CASES**: Has this action been previously filed **in this court** and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES**: Have any cases been previously filed **in this court** that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):** _____   DATE: 2-11-2014

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |