1  RUSSELL I. MIYAHIRA, City Attorney, SBN 122808
   ALISON STEVENS, Assistant City Attorney, SBN 192115
2  HAWTHORNE CITY ATTORNEY'S OFFICE
   4455 West 126th Street
3  Hawthorne, California 90250
   Tel.: (310) 349-2960 / Facsimile: (310) 978-9861
4  rmiyahira@cityofhawthorne.org / astevens@cityofhawthorne.org

5
   MARK RUTTER, SBN 58194
6  JILL WILLIAMS, SBN 221793
   CARPENTER, ROTHANS & DUMONT
7  888 South Figueroa Street, Suite 1960
   Los Angeles, California 90017
8  Tel: (213) 228-0400 / Facsimile: (213) 228-0401
   mrutter@crdlaw.com / jwilliams@crdlaw.com
9
   Attorneys for Defendants,
10 City of Hawthorne, Hawthorne Police Department,
   Chief Robert Fager, Officer Jeffrey Salmon, Officer Jeffrey Tysl,
11 Officer Erica Bristow, and Officer Mark Hultgren

12
                    UNITED STATES DISTRICT COURT
13
                   CENTRAL DISTRICT OF CALIFORNIA
14

15 JONATHAN MEISTER, an individual, )  Case No.: CV14-1096 MWF (SHx)
   and GREATER LOS ANGELES        )
16 AGENCY ON DEAFNESS, INC.,      )  **NOTICE OF MOTION AND**
                                  )  **MOTION TO DISMISS FIRST**
17            Plaintiffs,          )  **AMENDED COMPLAINT FOR**
                                  )  **DECLARATORY AND**
      vs.                         )  **INJUNCTIVE RELIEF AND**
18                                )  **DAMAGES; MEMORANDUM OF**
   CITY OF HAWTHORNE, et al.,     )  **POINTS AND AUTHORITIES IN**
19                                )  **SUPPORT THEREOF**
            Defendants.           )
20                                )  [Fed. R. Civ. P. 12(b)(1), (6)]
                                  )
21                                )
                                  )  Date:  July 28, 2014
22                                )  Time:  10:00 a.m.
                                  )  Courtroom:  1600
23                                )
                                  )  Discovery Cut-Off:  Not set
24                                )  Final Pre-Trial Conf.:  Not set
   _____ )  Trial:  Not set
25

26      PLEASE TAKE NOTICE that on July 28, 2014, at 10:00 a.m., or as soon

27 thereafter as counsel may be heard in Courtroom 1600 of the United States District

28 Court, Central District, located at 312 N. Spring Street, Los Angeles, California,
                                  - 1 -

Defendants City of Hawthorne, Hawthorne Police Department, Chief Robert Fager, Officer Jeffrey Salmon, Officer Jeffrey Tysl, Officer Erica Bristow, and Officer Mark Hultgren will and hereby do move this court for an order dismissing the First Amended Complaint for Declaratory and Injunctive Relief and Damages, pursuant to Federal Rules of Civil Procedure, Rule 12(b)(1) and (b)(6).  This motion is made on the ground that the Court lacks subject matter jurisdiction over the claims brought by Plaintiff Greater Los Angeles Agency on Deafness, Inc. ("GLAD"), where this plaintiff lacks standing to sue.

This motion is made after defense counsel directed a letter to plaintiffs' counsel detailing the bases of this motion, as required by Central District Local Rule 7-3.

This motion will be made and based on this Notice of Motion, the Memorandum of Points and Authorities, the pleadings and records on file with this court, any evidence of which the Court may take judicial notice prior to or at the hearing of this matter, and upon such oral or documentary evidence as may be presented at the hearing of this motion.

DATED:  June 23, 2014                    CARPENTER, ROTHANS & DUMONT

                                                                    /s/

                                         By:  _____
                                                MARK D. RUTTER
                                                JILL WILLIAMS
                                                Attorneys for Defendants

NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT

# **TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................... 1

II. PLAINTIFFS' CLAIMS........................................................................... 2

III. PROCEDURAL HISTORY ...................................................................... 2

IV. PLAINTIFF GLAD LACKS STANDING TO BRING ANY CLAIM
FOR RELIEF IN THIS ACTION............................................................. 3

    A.    Independent Standing..................................................... 4

    B.    Associational Standing................................................. 6

        1.    Plaintiff GLAD's "constituents" are not members
or the functional equivalent of members ............................ 6

        2.    The individuals identified by Plaintiff GLAD as its
"constituents" would not have standing in this
action ................................................................................... 10

V. CONCLUSION........................................................................................ 12

TABLE OF CONTENTS AND TABLE OF AUTHORITIES

1

# TABLE OF AUTHORITIES

2

**Cases**

3  Allen v. Wright, 468 U.S. 737 (1984)................................................................. 4

4

5  Ashcroft v. Mattis, 431 U.S. 171 (1977)............................................................ 11

6  Baker v. Carr, 369 U.S. 186 (1962) .................................................................. 11

7  City of Los Angeles v. Lyons, 461 U.S. 95 (1983) ........................................ 3, 11

8

9  DaimlerChrysler Corp. v. Cuno, 547 U.S. 332 (2006) ...................................... 3

10  El Rescate Legal Services, Inc. v. Executive Office of Immigration Review,

11      959 F.2d 742 (9th Cir. 1992)....................................................................... 5

12  Fair Employment Council v. BMC Mktg. Corp.,

13      28 F.3d 1268 (D.C.Cir.1994)....................................................................... 5

14  Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,

15      528 U.S. 167 (2000) ..................................................................................... 4

16  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,

17      528 U.S. 167 (2000) ..................................................................................... 9

18  Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982)...................................... 5

19  Hunt v. Washington State Apple Advertising Commission,

20      432 U.S. 333 (1977) ............................................................................ passim

21  La Association de Trabajadores de Lake Forest v. City of Lake Forest,

22      624 F.3d 1083 (9th Cir. 2010)................................................................ 4, 5, 6

23  Lance v. Coffman, 549 U.S. 437 (2007)............................................................. 3

24  Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) .................................... 3, 4

25  National Federation of the Blind v. Target Corp.,

26      Not Reported in F.Supp.2d, 2007 WL 1223755 (N.D. Cal. 2007) ................ 10

27

28

- ii -

O'Shea v. Littleton, 414 U.S. 488 (1974) ............................................. 11

Oregon Advocacy Center v. Mink, 322 F.3d 1101 (9th Cir. 2003) .................... 9

Org. for Advancement of Minorities and Disabilities v. Brick Oven Rest.,
    406 F.Supp.2d 1120 (S.D. Cal. 2007) ............................................ 10

Stop the Beach Renourishment, Inc. v. Dept. of Envtl. Prot.,
    560 U.S. 702 (2010) ............................................................ 9

United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.,
    517 U.S. 544 (1996) ............................................................ 4

Warth v. Seldin, 422 U.S. 490 (1975) ................................................ 6

**Other Authorities**

BLACK'S LAW DICTIONARY 306 (7th ed. 1999) ........................................... 9

TABLE OF CONTENTS AND TABLE OF AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

On February 13, 2013, the Hawthorne Police Department responded to a "suspicious circumstances" call, after neighbors reported that Plaintiff Meister was apparently burglarizing a home.  First Am. Compl., ¶¶ 31-34.  Upon arriving at the location, Defendant Officers Salmon and Tysl directed Meister to come towards them.  Id. at ¶ 35.  Meister complied and walked toward the officers and hopped over a low fence to where the officers were standing.  Id. at ¶ 37.  When Meister reached the officers, they grabbed his wrists and turned him around.  Id. at ¶ 38.  Meister alleges that he "reflexively" pulled his hands away, hopped back over the fence and moved toward a nearby gate.  Id.

Officers Salmon and Tysl jumped over fence, grabbed Meister and pushed him against a wall.  Id.  When the officers attempted to take Meister to the ground, Meister "instinctively" resisted and tried to stay on his feet (behavior he attributes to his college rugby experience).  Id. at ¶ 41.  Defendant Officers Hultgren and Bristow responded to assist, and after several taser deployments, the officers were ultimately able to subdue Meister on the ground and handcuff him.  Id. at ¶¶ 41-45.

After being medically cleared, Meister was cited and released.  Id. at ¶ 47.  Although Meister was charged with violations of the Penal Code, the charges against him were later dismissed.  Id. at ¶ 48.

In this action, Meister claims that the officers used excessive force against him and violated his Fourth Amendment rights when they arrested him.  In addition, alleging that he is "profoundly deaf" (Id. at ¶ 9), Meister claims that his rights under the Americans with Disabilities Act ("ADA") were that the police officers did not reasonably accommodate his disability when they detained and arrested him.  Joining in on Meister's claims that his rights under the ADA were violated is Plaintiff Greater Los Angeles Agency on Deafness, Inc. ("GLAD"), an organization that advocates for the rights of deaf and hard of hearing individuals,

- 1 -

NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1   which, along with Meister, seeks declaratory and injunctive relief.

2         As set forth below, the defendants respectfully submit that Plaintiff GLAD

3   lacks standing – either independently or as an association – in this action.

4   **II.  PLAINTIFFS' CLAIMS**

5         In this action, Plaintiffs Jonathan Meister and GLAD seek monetary

6   damages, civil penalties, and injunctive and declaratory relief against the City of

7   Hawthorne and its police officers.  The plaintiffs seek this relief based on the

8   following claims:

9         (1)   Violation of the ADA (42 U.S.C. § 12131) – by all plaintiffs against

10   the City and HPD;

11         (2)   Violation of Section 504 of the Rehabilitation Act (29 U.S.C. § 794) –

12   by all plaintiffs against Defendants City and HPD;

13         (3)   Violation of <u>Civil Code</u> § 11135[1] - by all plaintiffs against Defendants

14   City and HPD;

15         (4)   Violation of Fourth and Fourteenth Amendment rights under 42

16   U.S.C. § 1983 (excessive force, false arrest and malicious prosecution) – by

17   Plaintiff Meister against the individual defendant officers;

18         (5)   Violation of civil rights under 42 U.S.C. § 1983 (entity and

19   supervisory liability – by Plaintiff Meister against the City, HPD and Chief Fager;

20         (6)   Violation of civil rights under <u>Civil Code</u> §§ 51, 51.7, 52, 52.1, 54,

21   54.1 and 54.3 – by Plaintiff Meister against all defendants; and,

22         (7)   Violation of civil rights under <u>Civil Code</u> §§ 51, 51.7, 52, 52.1, 54,

23   54.1 and 54.3 – by Plaintiff GLAD against all defendants.

24   **III.  PROCEDURAL HISTORY**

25         The original Complaint in this action was filed on February 12, 2014.  The

26   defendants moved to dismiss the Complaint, advancing two primary arguments.

27   

28   [1] All references to code sections shall refer to California Codes, unless otherwise
stated.

            - 2 -

NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1  First, the defendants argued that no plaintiff had standing to seek injunctive or

2  declaratory relief.  Second, the defendants argued that Plaintiff GLAD lacked

3  standing to assert any claim.  On May 13, 2014, following a hearing, the Court

4  granted the defendants' motion without prejudice with respect to the issue of

5  Plaintiff GLAD's standing.  The Court denied the motion with respect to the

6  equitable relief issue.  See 5/13/14 Order, Doc. 15.

7        On June 2, 2014, the plaintiffs filed a First Amended Complaint.  For the

8  most part, the First Amended Complaint mirrors the original Complaint, with the

9  exception of limited, vague and conclusory allegations added in an effort to

10  establish GLAD's standing.  See First Am. Compl., ¶¶ 11-14, 16, 55-58, 112-122.

11  **IV.   PLAINTIFF GLAD LACKS STANDING TO BRING ANY CLAIM**

12  **FOR RELIEF IN THIS ACTION.**

13        "It goes without saying that those who seek to invoke the jurisdiction of the

14  federal courts must satisfy the threshold requirement imposed by Article III of the

15  Constitution by alleging an actual case or controversy."  City of Los Angeles v.

16  Lyons, 461 U.S. 95, 101 (1983).  Stated simply, if a plaintiff does not have

17  standing, the Court does not have subject-matter jurisdiction over the plaintiff's

18  claim.  See DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341-42 (2006).  Before

19  allowing an action to proceed on its merits, a federal court has the obligation to

20  assure itself of jurisdiction by inquiring into whether a plaintiff has standing.

21  Lance v. Coffman, 549 U.S. 437, 439 (2007).  It is respectfully submitted that

22  Plaintiff GLAD cannot meet the threshold requirement of standing and should be

23  dismissed from this action.

24        In Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), the Supreme Court

25  held that, to satisfy Article III's standing requirements, a plaintiff must establish

26  that (1) it has suffered an "injury in fact" that is (a) concrete and particularized and

27  (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly

28  traceable to the challenged action of the defendant; and (3) it is likely, as opposed

- 3 -

NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1    to merely speculative, that the injury will be redressed by a favorable decision.  Id.

2    at 560-61; Friends of the Earth, Inc. v. Laidlaw Envtl. Serv. (TOC), Inc., 528 U.S.

3    167, 180-81 (2000) ("Laidlaw").  "Supplementing these constitutional

4    requirements, the prudential doctrine of standing has come to encompass several

5    judicially self-imposed limits on the exercise of federal jurisdiction."  United Food

6    & Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 551

7    (1996) (internal quotation marks omitted).  These judicially self-imposed limits

8    include, among others, "the general prohibition on a litigant's raising another

9    person's legal rights. . ."  Allen v. Wright, 468 U.S. 737, 751 (1984).

10          In this case, Plaintiff GLAD alleges that it has independent standing in its

11   own right and associational standing.

12          **A.    Independent Standing**

13          In an effort to establish independent standing, the First Amended Complaint

14   alleges that the purported failure to accommodate Plaintiff Meister during his

15   arrest and detention has harmed GLAD, the organization, in three nebulous ways:

16   it "frustrated GLAD's mission" (First Am. Compl., ¶ 55), it "required [GLAD] to

17   provide additional educational programs to counteract the impression left by

18   Defendants' conduct" (Id. at ¶ 56), and it "forced GLAD to direct scarce resources

19   to identify, investigate, and counteract Defendants' discriminatory practices" (Id.

20   at ¶ 57).  These allegations, which are no more specific than those in the original

21   Complaint do not establish that GLAD has independent standing in this action.

22          In La Association de Trabajadores de Lake Forest v. City of Lake Forest,

23   624 F.3d 1083 (9th Cir. 2010), various plaintiffs, including a nonprofit association

24   consisting of a nationwide coalition of day laborers, brought suit against a city

25   challenging enforcement of restrictions on soliciting work on public sidewalks.

26   Noting that an "organization may sue only if it was forced to choose between

27   suffering an injury and diverting resources to counteract the injury," the Ninth

28   Circuit held that the nonprofit association did not have organizational standing.  Id.

- 4 -

NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1  at 1088, fn. 4.  The Court explained that an organization "cannot manufacture the

2  injury by incurring litigation costs or simply choosing to spend money fixing a

3  problem that otherwise would not affect the organization at all.  [Citation].  It must

4  instead show that it would have suffered some other injury if it had not diverted

5  resources to counteracting the problem."  Id. at 1088, *citing* Fair Employment

6  Council v. BMC Mktg. Corp., 28 F.3d 1268, 1276–77 (D.C.Cir.1994).

7       For instance, in El Rescate Legal Services, Inc. v. Executive Office of

8  Immigration Review, 959 F.2d 742 (9th Cir. 1992), the Ninth Circuit concluded

9  that an organization that represented Central American refugee clients in

10  immigration proceedings had standing to challenge the government's policy of

11  failure to provide full translation of deportation and exclusion hearings based on its

12  allegation that it was required to expend resources because of the policy (i.e. by

13  providing interpreting services to its clients) that it would not otherwise have to

14  spend.  Id. at 748.  Similarly, in Havens Realty Corp. v. Coleman, 455 U.S. 363

15  (1982), the Supreme Court held than a nonprofit membership organization had

16  standing in an action challenging a company's racial profiling of apartment

17  applicants.  In Havens, the organization's activities included "operation of a

18  housing counseling service, and the investigation and referral of complaints

19  concerning housing discrimination."  Id. at 368.  The Court concluded that the

20  organization's allegations that the racial profiling frustrated the organization's

21  counseling and referral services because of its "consequent drain on resources"

22  were sufficient to establish standing.  Id. at 369.

23       Here, GLAD does not allege that it would have suffered some other injury if

24  it had not diverted resources to funding this lawsuit.  Indeed, regardless of whether

25  GLAD is a party, the defendants' alleged ADA violations will be challenged by

26  Plaintiff Meister, who seeks the exact same relief as GLAD.  In other words,

27  because GLAD's mission is being advanced by Plaintiff Meister, GLAD need not

28  expend any resources at all.  Rather, it appears that GLAD's participation in this

- 5 -

1  lawsuit is nothing more than an attempt to "manufacture [an] injury by incurring
2  litigation costs or simply choosing to spend money fixing a problem that otherwise
3  would not affect [it] at all." La Association de Trabajadores, 624 F.3d at 1088.

4      **B.    Associational Standing**

5          When an association such as Plaintiff GLAD asserts standing solely as the
6  representative of its members, it "must allege that its members, or any one of them,
7  are suffering immediate or threatened injury as a result of the challenged action of
8  the sort that would make out a justiciable case had the members themselves
9  brought suit." Warth v. Seldin, 422 U.S. 490, 511 (1975). In Hunt v. Washington
10 State Apple Advertising Commission, 432 U.S. 333 (1977), the Supreme Court
11 outlined a three-pronged test that must be met in order for an association to
12 establish standing:

13              [A]n association has standing to bring suit on behalf of its
14              members when: (a) its members would otherwise have standing
15              to sue in their own right; (b) the interests it seeks to protect are
16              germane to the organization's purpose; and (c) neither the claim
17              asserted nor the relief requested requires the participation of
18              individual members in the lawsuit.

19 Id. at 343. Plaintiff GLAD does not pass this test for two reasons. First, as a
20 preliminary matter, the individuals Plaintiff GLAD identifies as its "constituents"
21 are not members of the organization in an actual or technical sense, nor are they
22 the functional equivalent of members. Second, the individuals Plaintiff GLAD
23 identifies as its "constituents" would not otherwise have standing in this action to
24 bring this lawsuit in their own right because they have not suffered an "injury in
25 fact".

26      **1.    Plaintiff GLAD's "constituents" are not members or the**
27              **functional equivalent of members.**

28 According to the First Amended Complaint, Plaintiff GLAD "is a nationally

- 6 -

NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1   recognized advocacy and service agency addressing the needs of the deaf and hard
2   of hearing population." First Am. Compl., ¶ 10.  Further, the Complaint alleges
3   that, "GLAD's specific and primary purpose is to act as a coordinating agency for
4   three regional providers that address the broad social service needs of deaf and
5   hard of hearing people through direct service provision, advocacy, research and
6   dissemination of information . . ." Id. at ¶ 11.  The Complaint broadly identifies
7   Plaintiff GLAD's "constituents" as all deaf and hard of hearing individuals
8   throughout ten California counties who are "'qualified individuals with a
9   disability' within the meaning of all applicable statutes." Id. at ¶ 15.

10        Although the First Amended Complaint alleges that deaf and hard of hearing
11  individuals comprise a majority of the board and "are present at all levels of the
12  organization" (Id. at ¶ 12), there are no allegations that any of the broad and all-
13  encompassing group identified as GLAD's "constituents" elect the Board of
14  Directors.  There are no allegations that the GLAD Board of Directors serve at the
15  will or pleasure of the constituents.  There are no allegations that only deaf and
16  hard of hearing individuals who are "qualified individuals with a disability" may
17  serve on GLAD's Board of Directors.  There are no allegations that any of the
18  constituents provide funding to GLAD for any reason, activity or use, including
19  the cost of pursuing lawsuits such as this.  There are no allegations that the state or
20  federal legislature has designated GLAD to be the advocate for their constituents.

21        The Supreme Court's holding in Hunt v. Washington State Apple
22  Advertising Commission, supra, demonstrates why the loose and broad category
23  of GLAD "constituents" do not confer standing on Plaintiff GLAD in this action.
24  In Hunt, the Washington State Apple Advertising Commission brought an action
25  that challenged the constitutionality of a North Carolina statute that prohibited the
26  display of Washington State apple grades on closed containers shipped into North
27  Carolina.  The primary issue considered by the Court was whether "the
28  Commission's status as a state agency, rather than a traditional voluntary

- 7 -

NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1  membership organization, preclude[d] it from asserting the claims of the

2  Washington apple growers and dealers who form its constituency." <u>Hunt</u>, 432

3  U.S. at 344.  In concluding that the Commission's constituents were the functional

4  equivalent of "members," the Court initially noted that the Commission's mission

5  was to protect and promote the Washington apple industry.  <u>Id.</u>  The Court then

6  emphasized several other facts it found germane to the issue:

7        Moreover, while the apple growers and dealers are not

8        "members" of the Commission in the traditional trade

9        association sense, they possess all of the indicia of membership

10        in an organization.  They alone elect the members of the

11        Commission; they alone may serve on the Commission; they

12        alone finance its activities, including the costs of this lawsuit,

13        through assessments levied upon them.  In a very real sense,

14        therefore, the Commission represents the State's growers and

15        dealers and provides the means by which they express their

16        collective views and protect their collective interests. . . .

17        ¶ Finally, we note that the interests of the Commission itself

18        may be adversely affected by the outcome of this litigation. The

19        annual assessments paid to the Commission are tied to the

20        volume of apples grown and packaged as "Washington

21        Apples."  In the event the North Carolina statute results in a

22        contraction of the market for Washington apples or prevents

23        any market expansion that might otherwise occur, it could

24        reduce the amount of the assessments due the Commission and

25        used to support is activities. This financial nexus between the

26        interests of the Commission and its constituents coalesces with

27        the other factors noted above to "assure that concrete

28        adverseness which sharpens the presentation of issues upon

NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1  which the court so largely depends for illumination of difficult

2  constitutional questions." [Citation omitted].

3  Id. at 344-345.  While Plaintiff GLAD's mission is to "address[] the broad social

4  service needs of deaf and hard of hearing people . . .," no factors similar to those

5  the Supreme Court found compelling in Hunt are present in this case.

6      The very definition of the word "constituent" highlights the complete

7  absence of facts sufficient to confer standing on Plaintiff GLAD:  "1. A person

8  who gives another the authority to act as a representative; a principal who appoints

9  an agent.  2. Someone who is represented by a legislator or other elected official."

10  BLACK'S LAW DICTIONARY 306 (7th ed. 1999).  Unlike the group of apple growers

11  represented by the Commission in Hunt, who are part of a group that has given

12  authority to an association to act on their behalf, the "constituents" identified by

13  Plaintiff GLAD simply fall within GLAD's umbrella by default, by virtue of a

14  disability.  Although Plaintiff GLAD may advocate for the rights of the deaf and

15  hard of hearing, the deaf and hard of hearing individuals are not either actual or

16  effective "members" of GLAD, the GLAD Board of Directors is not chosen or

17  elected by the disabled individuals, nor is GLAD a statutorily designated

18  mouthpiece for these individuals.

19      It is this critical distinction that separates this case from every case in which

20  courts have found that an association has standing to sue on behalf of its members

21  or constituents.  See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.

22  (TOC), Inc., 528 U.S. 167 (finding advocacy group, with actual members, had

23  associational standing); Stop the Beach Renourishment, Inc. v. Dept. of Envtl.

24  Prot., 560 U.S. 702 (2010) (finding that organization formed by, and whose

25  members consist of, owners of beachfront property had associational standing);

26  Oregon Advocacy Center v. Mink, 322 F.3d 1101 (9th Cir. 2003) (finding that

27  advocacy group for mentally disabled prisoners, which was created by statute,

28  required by statute to represent the interests of its constituents, and authorized by

- 9 -

NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1  statute to sue on behalf of its constituents had associational standing); <u>Org. for</u>

2  <u>Advancement of Minorities and Disabilities v. Brick Oven Rest.</u>, 406 F.Supp.2d

3  1120 (S.D. Cal. 2007) (finding that advocacy group, in which an individual

4  plaintiff was a "member," had associational standing); <u>National Federation of the</u>

5  <u>Blind v. Target Corp.</u>, Not Reported in F.Supp.2d, 2007 WL 1223755 (N.D. Cal.

6  2007) (finding advocacy group, with "a 50,000 strong membership, composed

7  primarily of blind individuals," had associational standing). Because Plaintiff

8  GLAD is not a membership organization, was not designated by statute to protect

9  the rights of those that fall under its broad umbrella, and contains no other

10 analogous indicia of "membership," it is respectfully submitted that Plaintiff

11 GLAD lacks standing in this action.

12         **2.**       **The individuals identified by Plaintiff GLAD as its**

13                         **"constituents" would not have standing in this action.**

14       Even if Plaintiff GLAD had members, or the functional equivalent of

15 members, or "constituents," it would still lack standing because it cannot meet the

16 first predicate element for associational standing identified by the Supreme Court

17 in <u>Hunt</u>: none of the individuals Plaintiff GLAD identifies as its "constituents"

18 would have standing to sue in their own right. <u>See Hunt</u>, 432 U.S. at 343.

19       The only individual with standing in this action is Jonathan Meister, the

20 individual who was arrested by the HPD. Plaintiff GLAD is not suing on behalf of

21 Jonathan Meister because Jonathan Meister is a named plaintiff in this action,

22 suing on his own behalf. With regard to all of the other individuals that would fall

23 within the broad umbrella of GLAD's mission, none of these individuals would

24 have standing to sue in their own right in this action because there are no facts

25 alleged in the Complaint that any of these other individuals suffered an injury in

26 fact.

27       For any of the other individuals who GLAD identifies as its constituents to

28 have standing to sue in their own right in this action, there must be facts that would

NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1   establish that those individuals have a "personal stake in the outcome." <u>Baker v.</u>

2   <u>Carr</u>, 369 U.S. 186, 204 (1962). "Abstract injury is not enough. The plaintiff must

3   show that he 'has sustained or is immediately in danger of sustaining some direct

4   injury' as the result of the challenged official conduct and the injury or threat of

5   injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" <u>City</u>

6   <u>of Los Angeles v. Lyons</u>, 461 U.S. at 101-102 (citations omitted). In <u>O'Shea v.</u>

7   <u>Littleton</u>, 414 U.S. 488 (1974), the Supreme Court addressed whether a class of

8   plaintiffs who alleged that they, as a minority group, were subjected to

9   unconstitutional and discriminatory sentencing policies had standing. The High

10  Court held that the class lacked standing. "Past exposure to illegal conduct does

11  not in itself show a present case or controversy." <u>Id.</u> at 495-496. The Court held

12  that the threat of possible discriminatory conduct to the plaintiffs was not

13  "sufficiently real and immediate to show an existing controversy simply because

14  they anticipate violating lawful criminal statutes and being tried for their offenses .

15  . ." <u>Id.</u> at 496.

16       Similarly, in <u>Ashcroft v. Mattis</u>, 431 U.S. 171 (1977), the Supreme Court

17  held that the father of a boy who had been killed by the police did not have

18  standing to seek a declaration that the statute which authorized police officers to

19  use deadly force in apprehending a person who committed a felony was

20  unconstitutional. The Court held that the plaintiff's allegation that he had another

21  son, who "if ever arrested or brought under an attempt at arrest on suspicion of a

22  felony, might flee or give the appearance of fleeing, and would therefore be in

23  danger of being killed by these defendants or other police officers" was

24  "speculation" that was "insufficient to establish the existence of a present, live

25  controversy." <u>Id.</u> at 172-73, n. 2.

26       Here, aside from Plaintiff Meister – who is pursuing this action on his own

27  behalf – there are no allegations that any other deaf and/or hard of hearing

28  individual has suffered any violations of their civil rights or their rights under the

- 11 -

NOTICE OF MOTION AND MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1   ADA.  The First Amended Complaint alleges that, "[i]n 2013, GLAD, through its

2   various programs, provided services to 27 constituents who were residents of the

3   City of Hawthorne." First Am. Compl., ¶ 16.  However, the fact that GLAD may

4   have provided some unidentified "service" to a constituent in Hawthorne does not

5   establish that any of these 27 constituents would have standing to sue in this

6   action.  Indeed, the fear or speculation that these individuals possibly *could* suffer

7   a violation of their civil rights or rights under the ADA if stopped and detained by

8   the Hawthorne Police Department is insufficient to confer Article III standing

9   because it does not establish the existence of a present, live controversy.

10  **V.    CONCLUSION**

11        Based on the foregoing, the defendants respectfully request that this court

12  grant the instant motion in its entirety, without affording the plaintiffs leave to

13  amend.

14

15  DATED:  June 23, 2014              CARPENTER, ROTHANS & DUMONT

16                                            /s/

17                          By:   _____

18                                 MARK D. RUTTER
                                   JILL WILLIAMS
19                                 Attorneys for Defendants

20

21

22

23

24

25

26

27

28
                                    - 12 -